NOT FOR PUBLICATION OR CITATION

Eastern District of Kentucky
FILED

JUN - 7 2006

At Ashland
LESLIE G. WHITMER
Clerk, U.S. District Court

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND

CIVIL ACTION NO. 06-CV-40-HRW

JERRY L. WOOTEN                                          PETITIONER

VS:                    **MEMORANDUM OPINION AND ORDER**

BRIAN PATTON, Warden                                    RESPONDENT

**** **** **** ****

Jerry L. Wooten, an individual presently confined at the Federal Correctional Institution

in Ashland, Kentucky, has filed a *pro se* petition for writ of habeas corpus, pursuant to 28 U.S.C.

§2241, and has now paid the district court filing fee.

This matter is before the Court for screening. 28 U.S.C. §2243; *Demjanjuk v. Petrovsky*,

612 F. Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970),

*cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir.

1970)).

CLAIMS

The petitioner alleges that the Bureau of Prisons ("BOP") has wrongly deducted 27 days

of his good time credits as penalty for a disciplinary offense about use of the prison telephones.

ALLEGATIONS IN THE PETITION

The following is a summary or construction of the factual allegations as set out in the

completed petition form, an attached memorandum, and exhibits attached thereto [Record No.

1]. As background, the petitioner states that he is currently serving two sentences handed down

in the United States District Court for the Eastern District of Michigan in 1999 and 2000.

The subject of this petition is a disciplinary matter. On August 12, 2004, a prison staff member wrote an incident report, charging the petitioner with "Use of the telephone for abuses other than criminal activity Code 297." A reading of the attached report shows that the charge was based on staff's monitoring telephone conversations, in which the petitioner participated similarly, on three different dates: July 6, 2004, July 20, 2004, and August 5, 2004.

The incident report describes the petitioner's telephone behavior, which was the same each time, and Wooten agrees that he did the following. Petitioner called a niece who is on his authorized telephone list and, at the same time, his wife Shawn Sloan, who is an inmate at another federal prison and is also authorized to telephone the niece, also called the niece. The petitioner admits, "While engaged in the telephone conversation with his niece, Wooten and Sloan exchanged messages through the niece."

However, the BOP and Petitioner's versions differ as to whether this constituted "third-party calling," which is prohibited under prison rules. The incident report contains the charging officer's conclusion, "This behavior is considered to be third party calling and Wooten is clearly in violation of the regulations governing the Inmate Telephone System." Upon an investigation of the charge by another prison staff member, the petitioner explained, "He calls his neice [sic] and if his wife calls in during the call, the neice will relay messages back & forth."

Petitioner Wooten argued then and now that he made no third party call. He alleges that he "called an authorized person (his neice [sic]), and never directly called or spoke to an unauthorized person (Sloan)." The petitioner's arguments are that because he "merely"

2

exchanged messages through an authorized person and no direct communication occurred, he did not make a forbidden third party call and thus (1) he should not have been found guilty of a prison offense; and (2) the prohibition against "third party calling" in the Code 297 offense is over-broad and vague, thus violative of the due process clause of the Fifth Amendment to the U.S. Constitution, because it does not give notice of the conduct proscribed.

With regard to the first of the petitioner's conversations, that of July 6, 2004, a disciplinary hearing on the charge was held on September 2, 2004. The petitioner's continuing defense was that his actions did not constitute third party calling. The Disciplinary Hearing Officer ("DHO"), however, concluded that "this was clearly a three party call," and imposed several sanctions, including the loss of "27 days GCT from Comp 010, PLRA." The officer explained the reasons as follows:

> The use of a telephone while incarcerated is a privilege, not a right. It is an important part of the institution's security that inmates only be allowed to contact those persons authorized. Not only is this an internal security matter but the Bureau of Prisons has an obligation, to the public at large, to ensure that inmates are not using the telephone to contact unauthorized persons, for criminal activity, drug transactions, conducting businesses or to threaten or harass members of the public. For these reasons, the Bureau of Prisons has developed telephone monitoring procedures.

Exhibit 2. The remaining exhibits are the documents exchanged as the petitioner appealed the DHO decision through the administrative scheme to exhaustion, the National Office writing that it agreed with the previous levels of appeal that the petitioner's telephone behavior constituted a three way call "and circumvented the telephone monitoring procedures." Therefore, return of the lost good conduct time and expungement of the incident were denied.

3

## DISCUSSION

The offense at issue herein is described in BOP Program Statement 5270.07, <u>Inmate Discipline and Special Housing Units</u>, as follows:

### Code 297

Use of the telephone for abuses other than criminal activity (*e.g.*, circumventing telephone monitoring procedures, possession and/or use of another inmate's PIN number; third party calling; third-party billing; using credit card numbers to place telephone calls; conference calling; talking in code).

*Id.*, at App. 1-2.

It is a basic principle of due process that a law is void for vagueness if its prohibitions are not clearly defined."*Grayned v.. City of Rockford*, 408 U.S. 104, 108 (1972). In the context of prison regulations, "[d]ue process undoubtedly requires certain minimal standards of specificity in prison regulations, but we reject the view that the degree of specificity required of such regulations is as strict in every instance as that required of ordinary criminal sanctions." *Meyers v. Aldredge,* 492 F.2d 296, 310 (3d Cir.1974). Thus, "vagueness principles must be applied in light of the legitimate needs of prison administration." *Id.* at 311.

Because legalistic wrangling over the meaning of prison rules "may visibly undermine the [prison] administration's position of total authority," federal courts have deferred to the interpretation of those rules by prison authorities "unless fair notice was clearly lacking." *Hadden v. Howard,* 713 F.2d 1003, 1008 (3d Cir.1983) (quoting *Meyers,* 492 F.2d at 311).

Here, Code 297 prohibits telephone activities constituting "third-party calling." This Court finds that the language of Code 297 is sufficient to provide "fair notice" to an inmate that third party calls are prohibited. To the extent that the petitioner suggests that his behavior did

not amount to the prohibited third-party calling, his purported ignorance lacks credibility.  He admits he was able to call a person on his approved recipient list who is also on his wife's approved recipient list and thereby pass messages through her to his wife, clearly a third party, and to receive his wife's responses to his messages.  Three people were connected by telephone lines.  It is not unreasonable to conclude, as did the DHO, that the petitioner was aware that this conduct was prohibited and that his conduct in the face of this knowledge constituted an offense of which Wooten was guilty.

As to the petitioner's challenge to being found guilty of the offense, in *Superintendent v. Hill*, 472 U.S. 445 (1985), the Supreme Court of the United States set out the constitutional standard when it held that

> [a]ssuming that good time credits constitute a protected liberty interest, the revocation of such credits must be supported by some evidence in order to satisfy the minimum requirements of procedural due process . . . . [a]scertaining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of witnesses' credibility, or weighing of the evidence, but, instead, the relevant question is whether there is any evidence in the record to support the disciplinary board's conclusion.

*Id.* at 454-55.

In the case *sub judice*, the DHO had the incident report, wherein prisoner officers had listened to the conversations and recounted that the same behavior by the petitioner occurred on all three occasions.  After calling his niece, whom he identified as Candy, "Wooten would tell Candy what to say to Sloan and Sloan would do the same."  The DHO also had the petitioner's own admissions, then and earlier, about how the three participants had passed messages back and forth through the niece.  Clearly there was some evidence in this case that the petitioner was

5

guilty of committing a Code 297 offense. *See Wagner v. Seely*, 915 F.2d 1575 (7th Cir. 1990) (unpublished), *cert. denied*, 501 U.S. 1219 (1991).

As explained in *Superintendent v. Hill*, the role of the federal court is not to examine the entire record or to weigh evidence; rather, the "relevant question is whether there is any evidence in the record" to support the decision. 472 U.S. at 455. A court's independent assessment of witnesses' credibility is not required. *Id.* Because this Court has concluded that there is more "some evidence" to support the petitioner's conviction for circumventing the BOP's telephone monitoring system, Wooten has no due process claim with regard to his guilt.

Other prisoners have tried the same arguments. *See Joaquin v. Nash*, 2006 WL 840400 at *5 (D.N.J. 2006) (unpublished) (finding no due process violation where three persons were involved in a telephone conversation, the BOP prisoner's defense was that he did not know that his behavior was prohibited, and he had not presented any contradictory evidence "except his self-serving denial of intent or knowledge that such conduct was prohibited"). Other members of this Court have also heard these same arguments, examined the language of the Code 297 offense, and found no merit in any of the challenges thereto. *See Noe Mancillas v. George E. Snyder*, London No. 02-CV-01-DCR, Record No.15; and *Gary Cunningham v. Jose Barron, Jr.*, London 02-CV-556-KKC, Record No. 5.

This Court rules today as it did three years ago to the same arguments in *Macheo Wells v. Federal Bureau of Prisons*, Ashland 03-CV-14-HRW, Record No. 2.

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

6

(1)     Jerry L. Wooten's petition for writ of habeas corpus is hereby **DISMISSED**, *sua sponte*, for failure to state a claim upon which relief may be granted.

(2)     The instant action herein will be **DISMISSED** from the docket of the Court, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the respondent.

This June 6, 2006.

Signed By:

_Henry R Wilhoit Jr._

**United States District Judge**

7